UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAREQ ZIAD FOUAD ZAKARNEH, | CASE NO. 2:25-cv-00707-DGE |
| Petitioner, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 68) |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT et al., | |
| Respondents. | |

## I    INTRODUCTION

Before the Court are Petitioner Tareq Ziad Fouad Zakarneh's objections (Dkt. No. 74) to

the Report and Recommendation ("R&R") of United States Magistrate Judge Grady J. Leupold

(Dkt. No. 68), which recommends granting Respondents' motion to dismiss (Dkt. No. 20),

denying as moot Petitioner's motion to block deportation (Dkt. No. 32), and dismissing

Petitioner's petition for writ of habeas corpus without prejudice (Dkt. No. 1.)  For the reasons

that follow, the Court ADOPTS the R&R in full.

1

## II    BACKGROUND

2

### A.  Factual Background

3    The factual background of this case is lengthy, and the Court refers to Judge Leupold's

4    R&R for a more detailed recitation of the facts.  (Dkt. No. 68 at 2–5.)  Petitioner is a native and

5    citizen of the West Bank, Palestine, and he entered the United States on a student visa in March

6    2013 to study at Portland State University.  (Dkt. No. 22-1 at 2, 4.)  He was briefly married to a

7    U.S. citizen, which provided him with Conditional Permanent Resident status, but this status was

8    revoked when his wife failed to appear for an interview for their joint Form I-751 Petition to

9    Remove the Conditions on Residence.  (Dkt. No. 22-2 at 2–3.)  Petitioner was issued a Notice to

10    Appear ("NTA") to initiate removal proceedings on November 29, 2016.  (Dkt. Nos. 22-2 at 2–3;

11    22-3 at 2–4.)

12    Petitioner first filed for a waiver of the joint filing requirement to remove the conditions

13    on his residence, but USCIS denied the waiver, stating Petitioner "failed to provide sufficient

14    evidence to establish a bona fide spousal relationship with his wife."  (Dkt. No. 22-5.)  On July

15    15, 2019, an immigration judge affirmed the USCIS's denial of the waiver and ordered Petitioner

16    to voluntarily depart the country, or alternatively, be removed to the Palestinian Occupied

17    Territories.  (Dkt. No. 22-4 at 3, 24.)  Petitioner appealed this ruling to the Board of Immigration

18    Appeals ("BIA"), which subsequently dismissed the appeal.  (Dkt. No. 22-6 at 2.)  Petitioner

19    sought review of the BIA's dismissal with the Ninth Circuit, which temporarily stayed his

20    removal in November 2022; the stay was lifted in July 2023.  (Dkt. No. 21 at 2.)  In September

21    2023, Immigration and Customs Enforcement ("ICE") contacted Petitioner and ordered him to

22    report for removal and requested assistance in obtaining his travel documents but Petitioner did

23    not report as ordered.  (*Id.*)

24

1    Petitioner filed two motions for stay of removal in October and December of 2023; both

2    were denied.  (*Id.* at 3.)  On May 22, 2024, Petitioner was taken into ICE custody "due to his

3    failure to report to ICE and assist in obtaining travel documents."  (*Id.*)  Petitioner continued to

4    refuse to comply with ICE's efforts to obtain travel documents and filed another motion to stay

5    his removal with the Ninth Circuit in December 2024.  (*Id.*)  The motion was granted pending

6    the issuance of a mandate.  (Dkt. No. 22-7 at 2.)  Petitioner's appeal was dismissed on February

7    6, 2025, and the mandate issued on April 28, making Petitioner's order of removal final.  (Dkt.

8    No. 22-9 at 2.)

9    **B.  Procedural History**

10    Petitioner filed his petition for writ of habeas corpus in the District of Oregon on March

11    5, 2025.  (Dkt. No. 1.)  The case was transferred to this district (Dkt. No. 11), the proper

12    respondent was added, and the court directed service of the Petition.  (Dkt. No. 16.)

13    On May 29, 2025, Respondents filed a motion to dismiss.  (Dkt. No. 20.)  They argued

14    Petitioner is not entitled to habeas relief from his detention because at the time he filed his

15    petition, he was detained within the mandatory post-order removal period outlined in 8 U.S.C.

16    § 1231(a)(2).  (*Id.* at 6–9.)  Further, Respondents argue that even if Petitioner's detention

17    continues past the "presumptively reasonable" period, he cannot show that his detention will

18    continue for an indefinite period.  (*Id.*)  In response, Petitioner appears to contend his detention

19    violates the Fifth Amendment and that this habeas petition should be granted because he is still

20    pursuing other avenues to reopen his removal proceedings.  (Dkt. Nos. 50 at 14; 55 at 1.)  On

21    November 6, Petitioner was tentatively scheduled for a removal flight to the West Bank on

22    November 22, but he apparently refused the request to depart on a commercial flight.  (Dkt. No.

23    67 at 2.)

24

1    Judge Leupold issued his R&R on November 21, 2025.  (See Dkt. No. 68.)  He

2    recommended Respondents' motion to dismiss (Dkt. No. 20) be granted; Petitioner's motion to

3    block deportation (Dkt. No. 32) be denied as moot; Petitioner's petition for writ of habeas corpus

4    (Dkt. No. 1) be denied; and this action be dismissed without prejudice.  (Dkt. No. 68 at 9.)

5    Because Petitioner's removal flight was scheduled for November 22 and no status update had

6    been provided by the Government, the Court ordered Respondents on December 4 to show cause

7    as to whether Petitioner remained in custody at the Northwest ICE Processing Center

8    ("NWIPC").  (Dkt. No. 71.)  On December 5, Respondents confirmed that Petitioner remained in

9    detention and that he continued to refuse to cooperate in his removal.  (Dkt. No. 72.)  On

10   December 11, the Court received Petitioner's objections to the R&R.  (Dkt. No. 74.)  Petitioner

11   also filed a response to the December 5 status report (Dkt. No. 76) and a brief in support of his I-

12   589 application for asylum (Dkt. No. 77).

### III    STANDARD OF REVIEW

#### A.  R&R

15   A district court reviews de novo "those portions of the report or specified proposed

16   findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1)(C); *see*

17   *also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the

18   magistrate judge's disposition that has been properly objected to.").

19   Objections to an R&R must be "specific."  Fed. R. Civ. P. 72(b)(2).  "[M]ere

20   incorporat[ion]" of arguments from the underlying motions, without identifying "what portions

21   of the R&R" the objecting party "considers to be incorrect," does not constitute a specific

22   objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not

23   give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, 2021

WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021).  "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation."  *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

**B.  Writ of Habeas Corpus**

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on her habeas petition, Petitioner "must show she is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The detention, release, and removal of noncitizens subject to a final order of removal is governed by Section 241 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1231.  The requirements of the statute take effect once a final order of removal of a non-citizen is entered by an immigration judge.  The first 90-day period following the entry of the order of final removal is called the "removal period."  *Id.* § 1231(a)(1)(A).  Detention is mandatory

1    during that period. *Id.* § 1231(a)(2). However, once the 90-day removal period has expired,

2    continued detention is at the discretion of the Secretary. *Id.* § 1231(a)(6). There is no statutory

3    limit on the Secretary's discretion to detain non-citizens beyond the 90-day period, but in

4    *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), the Supreme Court held that the INA does not

5    authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of

6    removal. As the *Zadvydas* Court recognized, "[a] statute permitting indefinite detention of [a

7    noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's

8    Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody,

9    detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due

10   Process] Clause protects." *Id.* The *Zadvydas* court concluded, "once removal is no longer

11   reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The

12   "presumptively reasonable" period for detention following a removal order is six months. *Id.* at

13   701.

14                                **IV    DISCUSSION**

15         Judge Leupold recommends (1) granting Respondent's motion to dismiss (Dkt. No. 20);

16   (2) denying as moot petitioner's motion to block deportation (Dkt. No. 32); (3) denying

17   Petitioner's petition for writ of habeas corpus (Dkt. No. 1); and (4) dismissing this action without

18   prejudice. (Dkt. No. 68 at 9.) Petitioner's objections to the R&R (*see* Dkt. No. 74) are largely

19   factual and do not change the outcome of this order. His legal objections can be boiled down to

20   his overall objection to his detention, which he characterizes as indefinite because he has been

21   detained since May 2024. (*Id.* at 11, 12.) Petitioner also rehashes many of his arguments from

22   previous filings, including that he was wrongfully denied his Form I-751 (*id.* at 3); he was not

23

24

1    offered a credible fear interview (*id.* at 6, 14); he has various appeals pending (*id.* at 6, 8); and he

2    filed an I-589 application for asylum (*id.* at 8–9, 12).

3      The Court reviews de novo Petitioner's detention under 8 U.S.C. § 1231 and agrees with

4    Judge Leupold's conclusion that Petitioner is not subject to an indefinite period of detention in

5    violation of the Fifth Amendment's Due Process Clause.

6      Though Petitioner has been in detention since May 2024 (Dkt. No. 21 at 3), "[d]etention

7    during removal proceedings is a constitutionally permissible part of that process." *Demore v.*

8    *Kim*, 538 U.S. 510, 531 (2003).  As Judge Leupold noted, Petitioner's initial detention was

9    pursuant to 8 U.S.C. § 1226(c), which governs detention prior to the entry of a final order of

10   removal.  (Dkt. No. 68 at 4.)  But in April 2025, when the order of removal became final (*see*

11   Dkt. No. 22-9 at 2), the authority for Petitioner's detention shifted to 8 U.S.C. § 1231(a)(2).

12   (Dkt. No. 68 at 4.)  To the extent Petitioner challenges his pre-final removal order detention,

13   such a claim is moot.  *See Hector R. v. Sessions*, Case No. 18-cv-3050-ECT-KMM, 2019 WL

14   1905854, at *2 (D. Minn. Apr. 1, 2019) (citing *Alier D. v. Sec'y of Dep't of Homeland Sec.*, Case

15   No. 18-CV-1645 (NEB/HB), 2018 WL 5847244, at *2 (D. Minn. Nov. 8, 2018) ("The shift of

16   the government's authority to detain the petitioner from § 1226 to § 1231 renders moot his claim

17   based on pre-removal detention.") (citing *Oyelude v. Chertoff*, 170 Fed. App'x 366, 367, n.4 (5th

18   Cir. 2006)).

19     Petitioner's 90-day removal period ran from April 28, 2025, through July 27, 2025.  (Dkt.

20   No. 68 at 4.)  Mandatory detention of a noncitizen during that period "passes constitutional

21   scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1299, 1300–1301 (9th Cir. 2004) (citations

22   omitted).  On July 27, Petitioner's detention status shifted from mandatory to discretionary post-

23   order detention under 8 U.S.C. § 1231(a)(6).  (Dkt. No. 68 at 4.)  An order of detention during

24

1    the first six months after entry of a final removal order is presumptively reasonable. *Zadvydas*,

2    533 U.S. at 701.

3            At the time the R&R was issued, Petitioner was still within the six-month "presumptively

4    reasonable" period. (Dkt. No. 68 at 7) (citing *Zadvydas*, 533 U.S. at 701). And though

5    Petitioner has passed out of the six-month period since the R&R was issued, Respondents'

6    evidence shows that Petitioner's removal remains likely within a reasonable timeframe.

7    Deportation Officer Daniel Strzelczyk declared that "the government of Israel has approved

8    Petitioner's removal through Israel to the West Bank so long as a flight can be arranged." (Dkt.

9    No. 67 at 2.) At least two removal flights have been arranged for Petitioner: One on October 20,

10   which was canceled, and one on November 22, which Petitioner refused to board. (*Id.*)

11   Assistant Field Office Director Wilfredo Baez-Santiago declared that when NWIPC officers

12   provided an "[Israel] customs form" for Petitioner to sign in anticipation of the November 22

13   flight, he became agitated and refused to comply. (Dkt. No. 73 at 2.) Officers decided not to use

14   physical force to effect removal on the November 22 flight and stated their intent to schedule

15   another removal flight in the "near future." (*Id.*) The Court agrees with Judge Leupold that

16   based on this evidence, there does not appear to be a specific barrier to Petitioner's removal, a

17   lack of diligence on the part of the Government, or any other reason to question the likelihood of

18   his removal. *E.g.*, *Del Toro-Chacon v. Chertoff*, No. 2:05-cv-01861-RSL, 2008 WL 687445, at

19   *7–8 (W.D. Wash. Mar. 10, 2008) (detention is not indefinite where removal is delayed by a

20   petitioner's challenges to agency decisions and "there is no showing that the government has

21   caused any unreasonably delay").

22           Further, a noncitizen "cannot assert a viable constitutional claim where his indefinite

23   detention is due to his failure to cooperate with the [Government's] efforts to remove him."

24

1  *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003); *see also* 8 U.S.C. § 1231(a)(1)(C).  The

2  Ninth Circuit has held that 8 U.S.C. § 1231(a)(1)(C), as long as it is interpreted mindfully of the

3  concerns underlying *Zadvydas*, "authorizes the [Government]'s continued detention of a

4  removable [noncitizen] so long as the [noncitizen] fails to cooperate fully and honestly with

5  officials[.]"  *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003).  Here, the evidence shows that at

6  least since November 21, 2025, Petitioner's apparent noncompliance has contributed to his

7  continued detention, and Petitioner has not refuted this evidence.  (*See* Dkt. No. 73 at 2.)

8       The Court is thus satisfied that Petitioner's detention complies with applicable statutory

9  and constitutional protections and concludes along with Judge Leupold that Petitioner is not

10 entitled to habeas relief at this time.

## V       CONCLUSION

12       The Court has reviewed Petitioner's objections (Dkt. No. 74), Judge Leupold's R&R

13 (Dkt. No. 68), Respondent's motion to dismiss (Dkt. No. 20), Petitioner's motion to block

14 deportation (Dkt. No. 32) and his petition for writ of habeas corpus (Dkt. No. 1), along with the

15 underlying record.  The Court ADOPTS the R&R and ORDERS:

16    1.  Respondents' motion to dismiss (Dkt. No. 20) is GRANTED;

17    2.  Petitioner's motion to block deportation (Dkt. No. 32) is DENIED as moot;

18    3.  Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is DENIED without

19       prejudice; and

20    4.  This action is DISMISSED without prejudice.

Dated this 9th day of January 2026.

David G. Estudillo
United States District Judge